# IN THE COURT OF APPEALS OF IOWA

No. 15-0192
Filed March 9, 2016

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JAMAR RONOD WISE,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Todd A. Geer, Judge.

A defendant convicted of first-degree robbery as a juvenile challenges the district court's decision to reimpose the mandatory minimum sentence. **SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

Mark C. Smith, State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik and Kelli Huser, Assistant Attorneys General, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.  Bower, J., takes no part.

**TABOR, Judge.**

Jamar Wise was sixteen years old when he robbed a Waterloo motel clerk at gunpoint on January 26, 2009. Wise pleaded guilty to first-degree robbery in return for the State's reduction of another pending robbery charge to first-degree theft. Wise received indeterminate sentences of twenty-five and ten years, to be served concurrently, with a mandatory minimum term of seventeen-and-one-half years without parole on the robbery conviction. After our supreme court issued *State v. Lyle*, 854 N.W.2d 378 (Iowa 2014), Wise sought resentencing on the robbery conviction. Following a hearing in January 2015, the district court reissued the same sentence. Wise challenges the resentencing decision.

Wise contends the district court impermissibly relied on an unproven offense when it again imposed the mandatory minimum term. Specifically, the court considered Wise's plea bargain to avoid a second armed-robbery charge. We agree Wise is entitled to another resentencing hearing. Accordingly, we vacate Wise's sentence and remand with directions.

## I.     Facts and Prior Proceedings

On April 15, 2011, Wise entered Alford pleas[1] to two offenses. The first offense involved an armed hold-up by three suspects at a Waterloo Kwik Stop on November 6, 2008. Investigators eventually connected Wise to the hold-up by identifying his DNA on a baseball cap left behind at the convenience store. In a

---

[1] A defendant may "voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford,* 400 U.S. 25, 37 (1970).

trial information filed July 13, 2009, the State charged Wise with robbery in the first degree in connection with the convenience store incident. The State later amended the charge to theft in the first degree. The second offense involved an armed hold-up by two suspects at the Motel 6 on Waterloo's Logan Avenue on January 26, 2009. The motel clerk was struck in the head with a handgun before the assailants left with the cash. In another trial information filed July 13, 2009, the State charged Wise with robbery in the first degree in connection with the motel incident. Wise agreed to plead guilty to that forcible felony in return for the State's charging concession on the other crime.[2] The parties jointly recommended concurrent sentences.

On the same day, the district court imposed concurrent sentences of ten years for the theft conviction and twenty-five years for the robbery conviction. The robbery sentence carried a seventy-percent mandatory minimum term—the equivalent of seventeen and one-half years.

On September 25, 2014, Wise filed a motion to correct illegal sentence based on our supreme court's cruel-and-unusual-punishment holding in *Lyle*. *See Lyle*, 854 N.W.2d at 402 (holding statutory sentencing scheme mandating minimum terms of incarceration for juveniles violated article 1, section 17 of the Iowa Constitution). The district court set a hearing and ordered an updated presentence investigation (PSI) report.

At the January 5, 2015 hearing, the prosecutor asserted: "[T]his is a resentencing on a robbery first degree, and under *Lyle*, the only question

---

[2] At the time of the plea and sentencing hearing, Wise had only completed tenth grade.

available for the court is whether the mandatory minimums should apply." The prosecutor discussed Wise's history of juvenile offenses, including charges of robbery, burglary, and false imprisonment stemming from a home invasion on December 8, 2008—an incident occurring between the convenience store hold-up and the motel robbery. During the home invasion, according to the prosecutor, Wise "duct taped two girls together." Wise was adjudicated delinquent for those offenses on March 16, 2009, and ordered to the state training school. The State argued the mandatory minimum was "appropriate" because Wise posed a "danger to the community"—in part because he used a handgun in all three events. The State also noted the updated PSI showed Wise had never been employed, had prior alcohol and drug issues, and had eight disciplinary reports while in prison.

Defense counsel called Wise's aunt and uncle to testify that he had the support of family and church members if he should be paroled. In chronicling Wise's family dynamics, the PSI reported Wise "did not have any father figure in his life." His father was killed in an accident before Wise was born. Wise's mother had serious problems with substance abuse, resulting in Wise being raised by his grandmother from age ten. Wise's uncle addressed the efforts of his seventy-seven-year-old mother, who attended the resentencing hearing, stating: "Once she found out [Jamar] was getting in trouble, she sacrificed a lot of things for him to make him a better person." Wise's uncle also testified he advised Wise not to accept the State's plea offer.

Defense counsel acknowledged Wise had experienced disciplinary problems in the "pressure cooker" of being incarcerated, but pointed out Wise had earned his GED and was employed in the prison bakery. Wise personally addressed the court, admitting his behavior in prison was "not the best," but he asked for a chance to "get [his] life back on track." The PSI included Wise's written version of the robbery offense: "Young. Not knowing what the outcome would be. I didn't think. Hanging around the wrong crowd and drugs." Defense counsel asked the court to lift the mandatory minimum so Wise could have the opportunity to get out of prison before his mid-thirties, get back to school, start a career, and "still be a productive member of the community."

In rejecting Wise's request to jettison the mandatory minimum term, the resentencing court employed the following reasoning:

> I'm sure you're aware that the offenses that you committed with the home invasion and this robbery and also the first degree theft . . . [w]hich was originally another robbery case, those are all among the very most serious charges that an individual can commit. And I'm sure you're aware, I hope you've thought about it anyway, that in committing those offenses, we have a human being, granted a young human being, committing extremely terrifying and violent offenses against fellow human beings. And we do consider the nature of the offenses you've committed, not only in this case, but also in your history.

The resentencing court continued to discuss Wise's prior offenses:

> And another thing I take a look at when I consider risks to reoffend is whether they were all committed at the same time or whether there was time in between offenses and whether there was an offense pending when a new offense occurred, and you did have offenses pending against you when you committed the other two offenses, and that's telling that someone may be out of control with very violent propensities, and we do have a need to protect the community.

The resentencing court then gave its own assessment of Wise's plea deal:

> I also consider the extent to which you bargained for the sentence that you got, and you did, because you had two robberies, and you only ended up with one. And not only that, but [the original sentencing court] I assume pursuant to the agreement, ran the two concurrently with each other, at the same time, and potentially you were looking at two robberies being stacked one on top of another in light of the circumstances of the offenses. And I disagree with your uncle. I think you made a really good deal, because you were looking at a lot more time than you were ultimately sentenced to. And I look at the strength of those cases. Those cases obviously were—they were strong cases that the State was prepared to present against you.

The court mentioned Wise's prison disciplinary sanctions, opining: "[Y]ou haven't been a model prisoner any means." The court noted Wise's family support and opined he "didn't have a real challenged background" when he committed the offenses, telling him: "[Y]our upbringing wasn't to blame. Choices that you were making, people that you were hanging out with is partly to blame, and, also, you are to blame." Before reimposing the original sentence, the court made a passing reference to Wise's age at the time he committed the offenses, noting "that's something that mitigates in your favor."

Wise filed a timely notice of appeal from the order overruling his motion to correct an illegal sentence.

## II. Scope and Standards of Review

Wise contends the sentencing proceedings should be reviewed for errors at law. *See* Iowa R. App. P. 6.907. The State argues abuse of discretion is the proper standard of review, citing *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). We would introduce a third possibility into the mix: when a defendant is

attacking a sentence on constitutional grounds, our review is de novo. *See State v. Seats*, 865 N.W.2d 545, 553 (Iowa 2015).

In the district court, Wise challenged the constitutionality of his mandatory minimum sentence under *Lyle*. But on appeal, he shifts his attention to impermissible sentencing factors considered by the district court en route to reimposing the constitutionally suspect sentence. Given the hybrid procedural posture presented by Wise on appeal, we opt to review for errors at law. *See State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000).

**III.    Analysis**

On appeal, Wise notes the resentencing court recognized that his young age at the time of the offense "mitigated in his favor" but still declined to lift the seventeen-and-one-half-year mandatory minimum term of incarceration without parole. In considering whether the mandatory minimum was constitutionally warranted, the district court was charged with considering, at a minimum, the following five mitigating factors:

> (1) the age of the offender and the features of youthful behavior, such as "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the particular "family and home environment" that surround the youth; (3) the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime; (4) the challenges for youthful offenders in navigating through the criminal process; and (5) the possibility of rehabilitation and the capacity for change.

*Lyle*, 854 N.W.2d at 404 n.10 (citing *Alabama v. Miller,* 132 S. Ct. 2455, 2468 (2012) and *State v. Null,* 836 N.W.2d 41, 74–75 (Iowa 2013)). The January 2015 record does not reveal a detailed discussion of these mitigating factors of youth. Our appellate courts have remanded for resentencing when the district court has

failed to apply any of these factors in mitigation of the mandatory punishment. *See, e.g.*, *State v. Pearson*, 836 N.W.2d 88, 97 (Iowa 2013) (faulting district court for focusing on protection of society rather than rehabilitation of youthful defendant); *State v. Davis*, No. 14-2156, 2016 WL 146528, at *4 (Iowa Ct. App. Jan. 13, 2016) (holding district court failed to explicitly consider several mitigating factors); *State v. Hajtic*, No. 15-0404, 2015 WL 6508691, at *2-3 (Iowa Ct. App. Oct. 28, 2015) (observing district court considered circumstances of crime as an aggravating rather than mitigating factor).

But Wise does not advance an argument concerning the *Miller/Lyle* factors on appeal. Instead, he raises a more generalized complaint—that the district court relied on an improper factor at the resentencing hearing. Wise points to case law prohibiting a sentencing court from considering an unproven or unprosecuted offense. *See State v. Gonzalez*, 582 N.W.2d 515, 516 (Iowa 1998). In support of his argument, Wise flags three references in the district court's statement of reasons for reimposing the mandatory minimum. First, the court told Wise: "[Y]ou did have offenses pending against you when you committed the other two offenses." Second, the court stated: "I consider the extent to which you bargained for the sentence you got, and you did, because you had two robberies, and you only ended up with one." Third, the court added: "I look at the strength of those cases. Those cases obviously were—they were strong cases that the State was prepared to present against you." Wise argues it was improper for the court to consider the robbery charge, which the State

amended to first-degree theft, because "there is neither an admission nor facts before the court showing Wise's commission" of the convenience store robbery.

The State suggests the first disputed reference was to Wise's juvenile delinquency offenses adjudicated in March 2009 and listed in the PSI. The State asserts: "Wise's criminal history was a proper consideration for the district court." That assertion would be true in an original sentencing hearing. But here the resentencing court's only role was to decide if the mitigating factors of youth justified removing the mandatory minimum term. *See Lyle*, 854 N.W.2d at 403 n.8 ("Clearly, these are all *mitigating factors,* and they cannot be used to justify a harsher sentence."). The court's consideration of pending or prior adjudications to justify a harsher sentence was error.

In defense of the court's consideration of the robbery charge connected to the convenience store, the State cites *State v. Thompson*, 275 N.W.2d 370, 372 (Iowa 1979), for the proposition:

> A sentencing court may, within statutory limits, impose a severe sentence for a lower crime on the ground that the accused actually committed a higher crime on the occasion involved if the facts before the court show the accused committed the higher crime or the defendant admits it . . . . This is part of making the punishment fit the crime." The State then pulls facts from the minutes of testimony in the convenience store case to justify the resentencing court's reliance on the second robbery charge.

The State's argument fails for two reasons. First, "[i]nformation contained in the minutes of testimony is not a permissible sentencing consideration if unproven." *See State v. Lovell*, 857 N.W.2d 241, 243 (Iowa 2014). Second, the question before the resentencing court was not strictly whether the punishment fit the crime, but whether the mandatory minimum term of punishment was cruel

and unusual when applied to a defendant who was sixteen years old when he committed the crime. *See Lyle*, 854 N.W.2d at 404 n.10 ("Under article I, section 17 of the Iowa Constitution, the portion of the statutory sentencing schema requiring a juvenile to serve seventy percent of the period of incarceration before parole eligibility may not be imposed without a prior determination by the district court that the minimum period of incarceration without parole is warranted under the factors identified in *Miller* and further explained in *Null*.").

Wise is correct that the district court relied on improper factors at the resentencing hearing. We are compelled to vacate Wise's sentence and remand this matter for resentencing before a different judge, who must follow the explicit and detailed resentencing procedures outlined in *Lyle*.

**SENTENCE VACATED AND REMANDED FOR RESENTENCING.**